## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LONNIE J. PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-2068 (ABJ) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE ) | |
| Executive Office for U.S. Attorneys, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

Plaintiff Dr. Lonnie Parker brings this action against defendant U.S. Department of Justice ("DOJ") alleging that DOJ violated the Freedom of Information Act ("FOIA") by improperly withholding agency records. The parties have filed cross-motions for summary judgment. [Dkt. # 7 and # 12]. For the reasons stated below, the Court will remand the matter back to the agency to reconsider the FOIA requests in light of this opinion and deny defendant's motion for summary judgment without prejudice and deny plaintiff's motion as moot.

## I.      BACKGROUND

Plaintiff seeks review of defendant's response to a FOIA request submitted to DOJ on April 26, 2010. Def.'s Statement of Material Facts ("Def.'s SMF") ¶ 1. [Dkt. # 7]. Plaintiff sought six categories of records all relating to former Assistant U.S. Attorney Lesa Gail Bridges Jackson and her unauthorized practice of law while working for DOJ as an Assistant U.S. Attorney ("AUSA"). Ex. A to Boseker Decl. [Dkt. # 7]. The request included the following six categories of documents:

(1) All agency records that document, discuss, or otherwise describe whether Lesa Gail Bridges Jackson was authorized to practice law, and/or a member of good standing of the Bar of the State of Arkansas, or any other state bar, at the time she was hired to work as a U.S. Attorney in 1989 . . . ;

(2) All agency records that document, discuss, or otherwise describe any annual or periodic certifications made by AUSA Jackson . . . asserting that she was an attorney in good standing and/or authorized to practice law . . . ;

(3) All agency records of any written communication between AUSA Jackson and the U.S. Attorney's Office that discuss whether she was a member of good standing of the Bar of the State of Arkansas, or authorized to practice law . . . ;

(4) All agency records of any investigations or agency review into allegations that AUSA Jackson was not authorized to practice law at the time she worked as a U.S. Attorney with the U.S. Attorney's Office, and/or had submitted false or misleading records pertaining to her bar status or authorization to practice law . . . ;

(5) All agency records that document, discuss, or otherwise describe any disciplinary action taken against AUSA Jackson . . . on the basis that she was not authorized to practice law, or had otherwise provided false information . . . [regarding her attorney status], or which otherwise discuss . . . the reasons that [she] is no longer an employee of the U.S. Attorney's Office at this time;

(6) All agency records that document, discuss or otherwise describe any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future circumstance where a U.S. Attorney could be hired or remain employed as a U.S. Attorney, notwithstanding the fact that they were suspended from the practice of law, or not authorized to practice law.

*Id.* Plaintiff's request stated that the disclosure of these records would serve the public interest by promoting government transparency, disclosing whether "there are safeguards and verification procedures used by the U.S. Attorney's Office to prevent against circumstances" involving unlicensed Assistant U.S. Attorneys, and determining whether DOJ had taken "corrective actions or policies or remedial measures." *Id.* at 2. DOJ processed plaintiff's request in two separate request files: (1) "the requests for records pertaining to personnel matters and law license records;" and (2) "the request for records pertaining to any disciplinary matters that may have involved Ms. Jackson." Def.'s SMF ¶ 3.

Regarding the first category of requests related to personnel and law license records, DOJ informed plaintiff on August 9, 2010, that it had found no responsive records to plaintiff's FOIA request. *Id.* at ¶ 5. On August 18, 2010, plaintiff appealed this response to DOJ's Office of Information Policy ("OIP"), and on September 30, 2010, OIP denied plaintiff's appeal. *Id.* at ¶¶ 6–8. OIP advised plaintiff that he could obtain the records from the National Personnel Records Center ("NPRC"), a division of the National Archives and Records Administration ("NARA"), which is located in St. Louis, Missouri *Id.*

Plaintiff followed this advice and submitted a FOIA request for the documents to NARA. Ex. F to Stotter Decl. at 1–3. [Dkt. # 12]. NARA released three documents to plaintiff that had been located at NPRC but simultaneously informed him that it did not possess the records because they were never actually "accessioned" to NARA. *Id.* at 10–11. NARA explained:

> I have conducted a search in NARA's Department of Justice holdings for records that would fall within the date span (1989–2001) you mention in your original FOIA request. Regretfully the records you seek have not been accessioned as permanent records into NARA's holdings. I recommend that you contact the Department of Justice's Records Management Office . . . . You may seek judicial review in the United States District Court for the . . . District of Maryland, which is where the records are located.

*Id.*

Regarding the second category of records, those related to disciplinary matters involving AUSA Jackson, DOJ informed plaintiff on June 10, 2010, that it "would neither confirm nor deny that any records existed concerning living third parties," explaining that the release of such records, assuming any existed, would violate the Privacy Act, 5 U.S.C. § 552a (2006), and would be exempt from the FOIA pursuant to Exemptions (b)(6) and (b)(7)(C). Def.'s SMF ¶ 9. On June 17, 2010, plaintiff appealed this decision to OIP. *Id.* at ¶ 10. On August 30, 2010, OIP denied the appeal. *Id.* at ¶ 11.

Finally, DOJ did not address the sixth category of documents plaintiff requested: "All agency records that document, discuss or otherwise describe any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future circumstance wherein a U.S. Attorney could be hired or remain employed as a U.S. Attorney, notwithstanding the fact that they were suspended from the practice of law, or not authorized to practice law." Ex. A to Boseker Decl. DOJ maintains that "[t]his item, both initially and currently, is not comprehended sufficiently to address, and has been interpreted as characterizing alleged facts, and too vague to constitute a FOIA request." Boseker Decl. ¶ 6 n.1.

## II. STANDARD OF REVIEW

The district court reviews the agency's action de novo, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); accord *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). However, where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

### III. ANALYSIS

#### A.  Legal Framework

FOIA requires the release of government records upon request to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  But Congress also recognized "that legitimate governmental and private interests could be harmed by the release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.").  The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68.  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith,'" *id*., quoting *Trans. Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69

(D.D.C. 2001).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).  Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

### B.  First Category of Records: Personnel and Law License Records

The first category of documents involves AUSA Jackson's personnel records.  Def.'s SMF ¶ 3.  The Court notes that, based on the record before it, it is completely unclear where the responsive documents are located and which agency has responsibility for searching and providing access to the documents.  It is clear, though, that DOJ spent no more than one hour on the matter.  The record includes the following information:

- On April 26, 2010, plaintiff submitted his FOIA request to DOJ.  Ex. A to Boseker Decl.

- On August 9, 2010, DOJ informed plaintiff's counsel that the search for the Personnel records at EOUSA had revealed no responsive records.  Ex. D to Boseker Decl.

- On August 18, 2010, plaintiff appealed that decision to OIP.  Ex. E to Boseker Decl.

- On September 30, 2010, OIP affirmed the August 9 EOUSA determination, stating that EOUSA's response "was correct," and that it had conducted an adequate and reasonable search for responsive records.  Ex. G to Boseker Decl.

- The September 30 OIP letter also stated: "Please be advised that the National Personnel Records Center ("NPRC"), which is part of the National Archives and Records Administration ("NARA") bears primary responsibility for maintaining records of former federal government employees.  I suggest you submit a request to the NPRC for the records you seek . . . . " *Id.*

- On October 5, 2010, plaintiff submitted a FOIA request to NARA.  Ex. F to Stotter Decl.

- On March 9, 2011, NARA produced three documents that were located at the NPRC.  *Id.* at 5–7.

- On April 7, 2011, plaintiff appealed NARA's FOIA response on the grounds that the response "failed to provide all non-exempt responsive records (and portions thereof) as required by FOIA." *Id*. at 8.

- On April 19, 2011, NARA denied the appeal and told plaintiff that "the records you seek have not been accessioned as permanent records into NARA's holdings. I recommend that you contact the Department of Justice's Records Management Office . . . You may seek judicial review . . . [in] the District of Maryland, which is where the records are located." *Id*. at 10–11. The Court notes that DOJ is where plaintiff started in the first place.

- DOJ represents in its briefs that all responsive records are "most likely" located at the NPRC, located in St. Louis, Missouri. Def.'s Mem in Supp. of Mot. for Summ. J. at 5.

- And, according to NARA regulations, the records *should* be at the NPRC in St. Louis, Missouri: "[t]wentieth-century personnel and medical records . . . of former civilian employees of the Federal government are held at NARA's [NPRC], located in St. Louis, Missouri. These records remain in the legal custody of the agencies that created them and access to them is governed by the FOIA . . . . The NPRC processes FOIA requests under the authority delegated by the originating agencies . . . ." 36 C.F.R. § 1250.8(b) (2012). But the regulation also provides: "In our national and regional records centers, NARA stores records that agencies no longer need for day-to-day business. These records remain in the legal custody of the agencies that created them. Access to these records is through the originating agency." *Id.* § 1250.8(c).

- The declaration of John Boseker, attorney-advisor for the EOUSA, which was submitted to the Court in support of defendant's motion for summary judgment, states that OIP advised plaintiff that the NPRC "bore the primary responsibility for maintain records of former federal government employees." Boseker Decl. ¶ 13. He does not address the discrepancy between DOJ's assertion that NARA was the likely repository for the records and NARA's FOIA response. Nor does he aver that he had received information from anyone with knowledge that the records were actually sent there.

- The Boseker declaration also provides: "Upon receipt of the FOIA/PA request for records pertaining to former AUSA Jackson's personnel records, EOUSA directed a search to be performed by the EOUSA Personnel Staff, as the most likely location for any such records. That office responded that Human Resources Specialist, Joan Winston, had performed a one hour search and found that former AUSA Jackson's personnel records, maintained in her Official Personnel File (OPF) had been forwarded to the Federal Records Center (sic), following AUSA Jackson's resignation November 27, 2001. Therefore no records were located as a result of the search." Boseker Decl. ¶ 20.

- A copy of the EOUSA Personnel Staff's response to EOUSA has not been provided to the Court, so while Boseker adds a footnote stating that "the records were forwarded to

the National Personnel Records Center," the Court has no way of knowing whether they were transmitted to St. Louis or to a regional facility used by DOJ.

So, at best, DOJ has told plaintiff that the records are "most likely" in St. Louis at the NPRC and in NARA's custody and control.  But, NARA states that it never received the rest of the records and points the plaintiff to DOJ's Records Management Office in Maryland.  In either event, DOJ retains legal custody over the records.  36 C.F.R. § 1250.8(b) (records forwarded to the NPRC "remain in the legal custody of the agency that created them"); *id*. § 1250.8(c) (records at NARA's national and regional records centers "remain in the legal custody of the agency that created them").

While it is true that NARA is responsible for *processing* FOIA requests made at the NPRC under section (b) of the regulation, the Court cannot conclude that responding to the FOIA request in this case fell within NARA's purview instead of DOJ's because no one has been able to inform plaintiff or the Court where the records are actually located.  And, there does not appear to have been any serious effort made to track them down.  Therefore, based on this record, the Court cannot find as a matter of law that the search was adequate.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (finding that an agency has to make "a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested).[1]

---

1       The Court notes that DOJ's declaration contained only a single statement to support the adequacy of its search:  "Human Resources Specialist, Joan Winston, had performed a one hour search and found that former AUSA Jackson's personnel records, maintained in her Official Personnel File (OPF) had been forwarded to the Federal Records Center . . . following AUSA Jackson's resignation November 27, 2001."  *See* Boseker Decl. ¶ 20.
        Given that there are seventeen Federal Records Centers, only one of which contains DOJ documents that are always accessed through NARA, this sentence does not provide enough detail regarding the scope and method of the agency's search to demonstrate that the search was "reasonably calculated to uncover all relevant documents."  *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542

DOJ cites two cases for authority that it has conducted an adequate search because the records are at the NPRC. *See* Def.'s Reply at 3–4, citing *Hart v. DOJ*, 648 F. Supp. 2d 113, 117 (D.D.C. 2009) ("[T]he defendant has fully explained its search results: it does not have custody or control of the only records where the requested documents are likely to be found.); *Bonaparte v. DOJ*, No. 07-749, 2008 WL 2569379 (D.D.C. 2008) ("Defendant reasonably explain[ed] that it could not produce records pertaining to [a] former AUSA . . . [because the] personnel file had been 'shipped to the National Personnel Records Center.'") (internal citation omitted). But those decisions are not helpful here because in both cases, there was no dispute that the records had been transferred to the NPRC. Here, there has been no clear factual showing that the records were actually moved or received, only a statement that such a transfer was "likely."

Although NARA is not a party to this lawsuit, it would behoove DOJ to communicate with NARA to ascertain:   (1) where the records are located; (2) which agency bears responsibility to search the records in that location; and (3) the status of the accession of the records concerning Ms. Jackson to NARA's permanent collection. If the records have not been transferred to NARA, then DOJ must provide the Court with sufficient grounds to conclude that its search has been adequate.

### C.  Second Category of Records: Disciplinary Matters Involving AUSA Jackson

The second category of documents involves records containing "information regarding any disciplinary action that may have been taken respecting former AUSA Jackson during her

---

(D.C. Cir. 1990).  To carry its burden, DOJ must present more than conclusory statements such as this one. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("In order to establish the adequacy of a search, agency affidavits must be . . . 'relatively detailed and non-conclusory . . . . '"), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  Furthermore, any search that stops after the agency determined that the records were located at the Federal Record Center, without more, was inadequate in light of 36 C.F.R. § 1250.8(c).

time of employment." Boseker Decl. ¶ 14. DOJ responded to plaintiff's request for these documents with a Glomar response asserting a categorical exemption of all potentially responsive documents under Exemptions 6 and 7(C).[2] Def.'s SMF ¶ 9; Boseker Decl. ¶¶ 33, 36. Because it claims this categorical exemption, DOJ did not search for responsive records. Def.'s Reply at 9; Boseker Decl. ¶ 16. The Glomar response allows an agency to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

To show that a Glomar response is appropriate, the agency must explain why it can neither confirm nor deny the existence of responsive records. *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) ("Adapting these procedures to the present case would require the Agency to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records."). This inquiry is not based on the actual content of the documents but on whether the potential harm created by revealing the existence of the documents is protected by a FOIA exemption. *See Wolf*, 473 F.3d at 374 ("In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases."). Thus, the question presented to the Court is would revealing the existence of documents related to a disciplinary investigation of AUSA Jackson constitute an

---

2       DOJ also claimed that releasing these documents would violate the Privacy Act, 5 U.S.C. § 552a. Def.'s SMF ¶ 9. Records required to be disclosed under FOIA are exempt from the Privacy Act. *See* 5 U.S.C. § 552a(b)(2).

"invasion of personal privacy" under either Exemption 6 or 7(C).[3]  The Court will examine each claimed exemption in turn.

      1.      <u>Exemption 7(C) – Records compiled for law enforcement purposes</u>.

FOIA Exemption 7(C) exempts documents compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  Because this is a lower standard than Exemption 6, which requires a "*clearly unwarranted*" invasion of privacy, this Court will address this exemption first.

In order for particular records to qualify for the Exemption 7, the agency must first demonstrate that the documents were compiled for law enforcement purposes.  *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974).  Thus Exemption 7(C) "does not exempt from disclosure . . . [i]nternal agency investigations . . . in which an agency, acting as the employer, simply supervises its own employees."  *Kimberlin v. DOJ*, 139 F.3d 944, 947 (D.C. Cir. 1998) (internal citations and quotations omitted), quoting *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984).  For this reason, disciplinary records are presumed to be withheld under Exemption 6, not Exemption 7(C).  *Stern*, 737 F.2d at 90.  To show that disciplinary records are in fact compiled for law enforcement purposes the agency must show that the records meet the test announced in *Rural Hous. Alliance*:  "[A]n agency's investigation of its own employees is

---

3      Plaintiff maintains that a Glomar response cannot be asserted for Exemptions 6 and 7(C). Pl.'s Reply at 11.  But other courts have entertained Glomar responses for those exemptions.  *See Roth v. DOJ*, 642 F.3d 1161, 1171–72 (D.C. Cir. 2011) ("In support of this Glomar response, the FBI relied on FOIA Exemptions 6 and 7(C) . . . .").  Plaintiff argues, however, that the Glomar response is limited to the situations enumerated in the FOIA statute where an agency may treat records as not subject to the requirements of FOIA. Pl.'s Reply at 11 n.10.  There is no basis for this contention.  A Glomar response may be used wherever confirmation of the existence of a record would cause the harm an exemption is intended to prevent.  *Wolf*, 473 F.3d at 374.  The case cited by plaintiff, *Milner v. Dept. of Navy*, 131 S. Ct. 1259 (2011), does not address this issue.

for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.'" *Stern*, 737 F.2d at 94, quoting *Rural Hous. Alliance*, 498 F.2d at 81.[4]

Here, DOJ has not met its burden of demonstrating that the disciplinary records in question were compiled for law enforcement purposes. The only evidence the agency offers to support their contention otherwise is a single sworn statement that "[a]ll information at issue in this case was compiled for law enforcement purposes." Boseker Decl. ¶ 30. This conclusory statement is not sufficient for the Court to evaluate whether these particular disciplinary records meet the *Rural Housing Alliance* test. *See Rural Hous. Alliance*, 498 F.2d at 82 n.48 (noting that when evaluating whether records were compiled for law enforcement purposes "a court must of course be wary of self-serving declarations of any agency"). In order to make this determination, DOJ must actually provide evidence that the disciplinary investigation focused on illegal activity which could result in civil or criminal sanctions.[5] *See id.* at 81.

Furthermore, plaintiff requested "[a]ll agency records . . . which otherwise discuss or describe the reasons that [AUSA] Jackson is no longer an employee of the U.S. Attorney's Office at this time." Ex. A to Boesker Decl. at 2. This category of records could conceivably

---

4       Although these precedents predate the 1986 FOIA amendments, they are still governing law for determining when records are compiled for law enforcement purposes. *See Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).

5       Although DOJ argues that plaintiff "presents no evidence to overcome its assertion" that any disciplinary records were compiled for law enforcement purposes, the plaintiff must only provide evidence to overcome an actual assertion that a particular investigation was for law enforcement purposes "based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340, quoting *Pratt v. Webster*, 673 F.2d 408, 421, (D.C. Cir. 1982); Def.'s Reply at 5 n.3. Here, DOJ does not contend that the records requested pertain to any particular investigation nor do they identify any particular law enforcement purpose for these records. Instead, the agency merely claims that it has a colorable claim given DOJ's law enforcement mandates. This is not sufficient to meet DOJ's burden.

include documents unrelated to any law enforcement purpose.[6]  It is simply not possible that

DOJ knows whether any particular records were or were not compiled for law enforcement

purposes without first conducting a search and identifying any responsive records.

Because DOJ failed to demonstrate that the responsive disciplinary records were

compiled for law enforcement purposes, it cannot rely on Exemption 7(C) to sustain its Glomar

response.  *See Jefferson v. DOJ*, 284 F.3d 172, 179 (D.C. Cir. 2002) ("[A] Glomar response was

inappropriate in the absence of an evidentiary record produced by OPR to support a finding that

all OPR records regarding AUSA Downing are law enforcement records.").

2.  Exemption 6 – Personnel files implicating a person's privacy interests.

Exemption 6 allows withholding of "personnel and medical files and similar files" the

disclosure of which "would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).  The primary purpose of Exemption 6 is "to protect individuals from the

injury and embarrassment that can result from the unnecessary disclosure of personal

information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).  Such a

determination is made by "weigh[ing] the privacy interest in non-disclosure against the public

interest in the release of records in order to determine whether, on balance, the disclosure would

work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46

(D.C. Cir. 1999) (internal quotation marks omitted and citation omitted).

The first step in the balancing test under Exemption 6 is to determine whether there is an

individual privacy interest in the material withheld. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*,

---

6    Plaintiff notes that some of the records it seeks may not fit into the two discrete
categories that DOJ created to process his FOIA request.  Pl.'s Reply at 21 & n.12.  Plaintiff's
contention has merit.  DOJ must search for all responsive records.  Further, some of the records
plaintiff seeks, such as those falling into plaintiff's category 6, may be found in the personnel or
disciplinary files of AUSA Jackson or other Assistant U.S. Attorneys but could potentially be
disclosed if all names were redacted.

879 F.2d 873, 874 (D.C. Cir. 1989).  The Supreme Court has recognized that "the concept of personal privacy . . . is not some limited or 'cramped notion.'"  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165 (2004), quoting *DOJ. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, (1989).  Rather, "privacy encompass[es] the individual's control of information concerning his or her person."  *Reporters Comm.*, 489 U.S. at 763.  FOIA's privacy exemptions were "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Wash. Post Co.*, 456 U.S. at 602 (internal quotation marks and citation omitted).  Information need not be intimate or embarrassing to qualify for Exemption 6 protection.  *See Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). Generally, personal identifying information such as a person's name, address, phone number, date of birth, criminal history, medical history, and social security number may be protected under Exemption 6.  *Wash. Post Co.*, 456 U.S. at 600; *Horner*, 879 F.2d at 875; *Taitz v. Obama*, 754 F. Supp. 2d 57, 60 (D.D.C. 2010).

Here, the Court finds that AUSA Jackson has a valid privacy interest at stake in DOJ's disclosure of disciplinary documents about her.  These records, if they exist, would reveal that DOJ took internal disciplinary action as a result of her misconduct, implicating her recognized interest "in avoiding disclosure of personal matters."  *Reporters Comm.*, 489 U.S. at 762.

Plaintiff argues, however, that any privacy interest is not significant because the events underlying any disciplinary action are a matter of public knowledge.  Pl.'s Reply at 16.  Plaintiff submitted two reports of the Arkansas Supreme Court Committee on Professional Conduct detailing the AUSA Jackson's surrender of her law license, a copy of the decision by the Arkansas Supreme Court accepting the surrender of her law license, and two Associated Press articles reporting her surrender of her law license.  Exs. A–E to Parker Decl.  Although this

argument has some force, a person does not lose all of her privacy interests simply because the information has been made public in the past. *See Reporters Committee*, 489 U.S. at 762–63 (rejecting "respondents' cramped notion of personal privacy" that because the information had "been previously disclosed to the public, . . . [the] privacy interest in avoiding disclosure of a federal compilation of these events approaches zero"); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 381 (1976) (recognizing that an Air Force Cadet has a privacy interest in previously disseminated information when the public "may have wholly forgotten his encounter with Academy discipline," but finding that interest overcome in that particular case).  Thus, while the publicity surrounding the matter may factor into the ultimate balance of the public and private interests, AUSA Jackson has at least some recognizable privacy interest in avoiding the disclosure of the existence of any disciplinary records in her name.

Next, the public interest in disclosure must be weighed against AUSA Jackson's privacy interest.  Although DOJ maintains that there is no public interest to be balanced in this case, the Court finds that there is a valid public interest in knowing how DOJ handles the investigation of unlicensed attorneys.  *See Lurie v. Dep't of Army*, 970 F. Supp. 19, 37 (D.D.C. 1997) ("The public interest also extends to knowing whether an investigation was comprehensive and that the agency imposed adequate disciplinary measures"), citing *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990).

Because the Court finds that there is both a real private interest and a valid public interest here, DOJ must weigh the privacy interest in non-disclosure against the public interest in the release of the records.  *See Judicial Watch v. U.S. Dep't of Homeland Sec'y*, 598 F. Supp. 2d 93, 96 (D.D.C. 2009) "[A]n agency must, for each record, conduct a particularized assessment of the public and private interest at stake.").  DOJ has not engaged in any balancing of the public

and private interests at stake here.  Accordingly, the Court will remand the case to the agency to engage in the statutory exercise established under FOIA.

### D.  DOJ's Response to Plaintiff's Third Category of Documents

Finally, DOJ failed to respond to plaintiff's sixth and final FOIA request, maintaining that "[t]his item, both initially and currently, is not comprehended sufficiently to address, and has been interpreted as characterizing alleged facts, and too vague to constitute a FOIA request." Boseker Decl. ¶ 6 n.1.  Plaintiff requested:

> [a]ll agency records that document, discuss or otherwise describe any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future circumstances wherein a U.S. Attorney could be hired or remain employed as a U.S. Attorney, notwithstanding the fact that they were suspended from the practice of law, or not authorized to practice law.

Ex. A to Boseker Decl. at 2.

The Court finds this request clear enough to constitute a valid FOIA request.  The plaintiff requested information related to DOJ's policies regarding unauthorized practice of law by Assistant U.S. Attorneys, specifically any remedial policies.  Further, DOJ's own FOIA regulations prevent it from denying a request simply because it unclear.  *See* 28 C.F.R. § 16.3(b) (2012).  Instead, DOJ must inform the requester why the request was unclear and allow the requester to modify their request.  *See id.* ("If a component determines that your request does not reasonably describe records, it shall tell you either what additional information is needed or why your request is otherwise insufficient.  The component also shall give you an opportunity to discuss your request so that you may modify it to meet the requirements of this section.").  DOJ did not comply with this regulation here.  DOJ must locate any responsive records to this sixth category of documents and either disclose them or claim an exemption.

### III. CONCLUSION

The Court concludes that DOJ's response to plaintiff's FOIA requests and the declaration it submitted in support of its motion for summary judgment are insufficient to resolve the cross-motions before it.   Accordingly, defendant's motion for summary judgment is denied without prejudice, plaintiff's motion is denied as moot, and the matter is remanded to DOJ for further action consistent with this opinion.

The parties are directed to file a joint status report on or before June 1, 2012, that is described further in the separate order issued this day.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 29, 2012