# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LONNIE J. PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-2068 (ABJ) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE ) | |
| Executive Office for U.S. Attorneys, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Lonnie J. Parker brings this action against defendant the U.S. Department of Justice ("DOJ"), Executive Office for U.S. Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et. seq.* (2012). Compl. ¶ 1 [Dkt. # 1]. Plaintiff submitted a FOIA request to defendant seeking records related to former Assistant U.S. Attorney ("AUSA") Lesa Gail Bridges Jackson and her unauthorized practice of law while working for DOJ. *Id.* Defendant did not produce any responsive records, and plaintiff filed his complaint on December 3, 2010. *Id.*

This is the third Memorandum Opinion in this case, and the Court must again determine whether defendant conducted an adequate search for responsive records and whether its withholdings of responsive records are justified. The Court finds that defendant has yet to demonstrate that its searches were adequate, but that most of the contested documents were properly withheld. Therefore, the Court will once again remand this case to defendant so that it

may conduct an adequate search for responsive records.[1] The Court will also direct defendant to release the non-exempt portions of the responsive records it found.

## BACKGROUND

On April 26, 2010, plaintiff submitted a FOIA request to defendant seeking records related to Lesa Gail Bridges Jackson and her unauthorized practice of law while working as an Assistant U.S. Attorney. *See* Ex. A to Decl. of John F. Boseker [Dkt. # 7]. Plaintiff sought six types of documents, which the Court later grouped into three broad categories:

Category one: personnel matters and law license records

(1) All agency records that document, discuss, or otherwise describe whether Lesa Gail Bridges Jackson was authorized to practice law, and/or a member of good standing of the Bar of the State of Arkansas, or any other state bar, at the time she was hired to work as a U.S. Attorney in 1989;

(2) All agency records that document, discuss, or otherwise describe any annual or periodic certifications made by AUSA Jackson . . . asserting that she was an attorney in good standing and/or authorized to practice law;

(3) All agency records of any written communication between AUSA Jackson and the U.S. Attorney's Office that discuss whether she was a member of good standing of the Bar of the State of Arkansas, or authorized to practice law;

Category two: disciplinary matters

(4) All agency records of any investigations or agency review into allegations that AUSA Jackson was not authorized to practice law at the time she worked as a U.S. Attorney with the U.S. Attorney's Office, and/or had submitted false or misleading records pertaining to her bar status or authorization to practice law;

(5) All agency records that document, discuss, or otherwise describe any disciplinary action taken against AUSA Jackson . . . on the basis that she was not authorized to practice law, or had otherwise provided false information . . . [regarding her attorney status], or which otherwise discuss . . . the reasons that [she] is no longer an employee of the U.S. Attorney's Office at this time;

---

1 Plaintiff seeks limited discovery pursuant to Federal Rule of Civil Procedure 56(d), Pl.'s Supp. Br. [Dkt. # 45] at 21, but in light of the Court's remand, the Court will deny this request as moot.

2

Category three: remedial measures

> (6) All agency records that document, discuss or otherwise describe any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future circumstances wherein a U.S. Attorney could be hired or remain employed as a U.S. Attorney, notwithstanding the fact that they were suspended from the practice of law, or not authorized to practice law.

*Id.*; *see also* 1st Mem. Op. [Dkt. # 18] at 6, 9, 16 (describing the three categories).

Defendant did not produce any documents in response to plaintiff's requests. Compl. ¶ 15. After administratively appealing defendant's decision, plaintiff filed a complaint in this Court on December 3, 2010. *See* Compl. ¶¶ 16–26. The parties filed cross-motions for summary judgment, *see* Pl.'s Mot. for Summ. J. [Dkt. # 12]; Def.'s Mot. for Summ. J. [Dkt. # 7], and in a March 29, 2012 memorandum opinion, the Court denied both motions and remanded the case to the agency for further action. 1st Mem. Op. at 9, 15–16 (ordering defendant to conduct a more thorough search for category one records, to fully justify its withholding of records responsive to category two, and to respond to the category three request).

In January and February of 2013, the parties renewed their motions for summary judgment. Def.'s Renewed Mot. for Summ. J. [Dkt. # 26]; Pl.'s Renewed Mot. for Summ. J. [Dkt. # 27]. In a memorandum opinion dated September 30, 2013, the Court again denied both motions and remanded the matter to the agency for further action. 2d Mem. Op. at 12 [Dkt. # 37]. Specifically, the Court ordered defendant to produce redacted versions of documents related to category one of plaintiff's FOIA request, *id.* at 10, and, with respect to categories two and three, to conduct an adequate search and produce all segregable non-exempt information to plaintiff, or to submit a supplemental declaration demonstrating that it had otherwise complied with its duties under FOIA. *Id.* at 11.

Defendant complied with the Court's order to produce the category one documents in December, 2013. Def.'s Notice of Compliance [Dkt. # 42]. On January 10, 2014, plaintiff notified the Court there were still issues to be resolved. Pl.'s Notice of Contested Issues [Dkt. # 44]. Pursuant to an order of the Court, plaintiff submitted a supplemental brief on February 11, 2014. Pl.'s Supp. Br. [Dkt. # 45]; *see also* Jan. 21, 2014 Minute Order.

Plaintiff asserts that defendant has not yet conducted an adequate search for records related to categories two and three of his FOIA request and that the exemptions claimed by defendant were unjustified. Pl.'s Supp. Br. at 4–20. On February 25, 2014, defendant responded that it had conducted an adequate search and that all responsive records were properly withheld under Exemptions 5 and 6 of FOIA, as well as the Privacy Act. Def.'s Resp. to Pl.'s Supp. Br. [Dkt. # 46] ("Def.'s Resp."); *see also* 5 U.S.C. §§ 552(b)(5)–(6), 552a. With leave of the Court, plaintiff filed a sur-reply to defendant's response on March 14, 2014. Pl.'s Sur-Reply [Dkt. # 48]; *see also* Feb. 28, 2014 Minute Order.

**STANDARD OF REVIEW**

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a

court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These nine FOIA exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). And, second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

I.   **Defendant has failed to show that its searches were adequate.**

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C.

Cir. 1983). To demonstrate the adequacy of its searches, defendant has submitted an affidavit from John F. Boseker, an Attorney Advisory with the EOUSA, that summarizes the searches conducted in response to plaintiff's FOIA request, as well as affidavits from three of its component offices: (1) the EOUSA General Counsel's Office ("GCO"); (2) the EOUSA Personnel Staff; and (3) the U.S. Attorney's Office for the Eastern District of Arkansas ("EDAR"). 3d Decl. of John F. Boseker [Dkt. # 46-1] ("3d Boseker Decl."); Decl. of Enoch Thomas Jr. [Dkt. # 46-2] ("Thomas Decl.") (GCO); Decl. of Jane Reimus [Dkt. # 46-3] ("Reimus Decl.") (Personnel Staff); Decl. of Jennifer E. Niemeyer [Dkt. # 46-4] ("Niemeyer Decl.") (EDAR). The Court finds that the GCO affidavit describes an adequate search. The affidavits submitted by Mr. Boseker, the EOUSA Personnel Staff, and EDAR, however, do not describe adequate searches. Therefore, the Court will once again remand the case.

### A. *Legal Standard*

To demonstrate that a search for responsive records under FOIA was adequate, an "agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol (Defenders II)*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). "[R]easonably detailed" affidavits or declarations must "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defenders II*, 623 F. Supp. 2d at 92 (finding a declaration deficient when it failed to detail the types of files searched, the agencies' filing methods, and the search terms used). In addition, an affidavit should include the "rationale for searching certain locations and not others." *Defenders II*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11 (holding affidavit was sufficient where it "outline[d] with reasonable detail the CIA's decision to limit the search"

to a particular area). Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith" and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior (Defenders I)*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), quoting *Trans Union L.L.C. v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

### B. The Third Declaration of John F. Boseker does not describe an adequate search.

To demonstrate that it conducted a search that was reasonably calculated to uncover all relevant responsive documents, an agency must explain its decision to limit the search to certain offices. *Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11. Here, defendant has "fail[ed] to explain" why the offices it chose to search "were the reasonably likely locations of the records sought." *Hook v. U.S. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 51 (D.D.C. 2012). The Third Boseker Declaration simply states that "EOUSA's FOIA Unit requested that certain EOUSA components and archives search their systems of record for responsive records," and that "[t]hese components include[d]" EDAR, GCO, Personnel Staff, and the National Archives and Records Administration. 3d Boseker Decl. ¶ 2. But this summary does nothing to explain why these "certain EOUSA components" were selected and not others. Therefore, the Third Boseker

Declaration does not describe an adequate search and the Court will remand this case to defendant.[2]

### C. The GCO search was adequate.

The declaration of Enoch Thomas Jr., paralegal specialist at the GCO, describes an adequate search because it sets forth a comprehensive description of how the office maintains records, which search terms were used, and how the search was conducted. *See Valencia-Lucena*, 180 F.3d at 326.

First, Mr. Thomas explains how records are maintained at the GCO. *See* Thomas Decl. ¶ 3. Until 2005, the GCO kept hard-copy records in a filing system. *Id.* The GCO also used an electronic database, the General Counsel's Tracking System Access Database ("GCTS"), but this database did not encompass all case files and consisted "largely of electronic summaries of events or records." *Id.* In 2005, the GCO transitioned to an electronic system called ProLaw and transferred its GCTS records into that database. *Id.* In addition, some of the hard-copy records were transferred to compact discs (CD's), while the rest remained in file rooms at the office. *Id.* ¶¶ 3, 5.

Mr. Thomas states that since 2005, "all records pertaining to a particular matter or case are retained in ProLaw" and that "[e]mployment matters are filed under the name of the individual who is the subject of the employment action." *Id.* ¶ 3. Accordingly, Mr. Thomas

---

2  Plaintiff also continues to challenge the sufficiency of defendant's search of the National Archives and Records Administration ("NARA"). *See* Pl.'s Supp. Br. at 6–7, 11–14. Defendant previously conducted a search at NARA and obtained former AUSA Jackson's personnel file. *See* 3d Boseker Decl. ¶ 4; 2d Decl. of John F. Boseker [Dkt. # 43-1] ¶ 10. This file was responsive to category one of plaintiff's FOIA request, and the Court has already determined that the search for category one records was adequate. *See* 2d Mem. Op. at 4–5. In his Third Declaration, Mr. Boseker avers that "there are *no other* records related to AUSA Jackson maintained by NARA." 3d Boseker Decl. ¶ 4 (emphasis in original). Although the Court has held that this affidavit was insufficient for other reasons, the Court sees no reason to doubt this statement. *See* 2d Mem. Op. at 4–5.

searched the ProLaw database using the search term "Jackson, Lesa" and found four electronic files that were created in the GCTS database. *Id.* ¶ 6. These four records pertained to four separate matters, labeled INV-01-06071, LER-99-02724, LER-01-02812, and LER-01-05809.[3] *Id.* Mr. Thomas then searched the records that had been saved on CD's using the search term "Lesa Jackson," and found two additional records. Thomas Decl. ¶ 7; 3d Boseker Decl. ¶ 7; *see also* Def.'s Notice of Compliance with Ct. Order [Dkt. # 52] at 1 (clarifying that the GCO search of CD's found two additional records).

In addition, Mr. Thomas conducted an initial search of the file rooms where hard-copy files were stored and found no responsive records. Thomas Decl. ¶ 5. The records management coordinator then also searched the file rooms, and confirmed that there were no "Lesa Jackson" files to be found. *Id.*

Finally, GCO contacted its records retention center, the Washington National Records Center, to determine whether the hard-copy versions of the files found on the electronic database were destroyed. Thomas Decl. ¶ 8. All but one file was destroyed and the remaining file contained no responsive records. *Id.*

Plaintiff contends that the GCO's search was inadequate because the GCO did not perform a search for relevant email records and because, he claims, the Thomas Declaration does not sufficiently describe the search procedure or methodology. Pl.'s Sur-Reply at 8–9 [Dkt. # 48]. But "[t]here is no requirement that an agency search every record system." *Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Rather, "the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information."

---

3  The term "LER" indicates that the file relates to "labor and employee relations." The term "INV" indicates that the file relates to an "investigative" matter involving DOJ's Office of Professional Responsibility or DOJ's Office of Inspector General. Thomas Decl. ¶ 6 n.1.

*Id*. at 154–55.  Plaintiff requested records related to disciplinary actions and remedial measures, and, according to Mr. Thomas, all records of that type are stored in ProLaw under the individual's name, on CD's, or in the GCO's hard files.  Thomas Decl. ¶ 3.  Therefore, the Court concludes that the GCO was not required to do an email search and that it conducted a "good faith, reasonable search" in this case.

Moreover, the Court finds that Mr. Thomas's declaration sufficiently describes the procedure and methodology used in the search because it is reasonably detailed.  *Oglesby*, 920 F.2d at 68; *Defenders II*, 623 F. Supp. 2d at 91.  It sets forth what databases were searched, why they were searched, and how they were searched.  Therefore, the declaration is sufficient and entitled to "a presumption of good faith."  *Defenders I*, 314 F. Supp. 2d at 8; *see also White v. DOJ*, 840 F. Supp. 2d at 89.[4]

### D.  The Personnel Staff search was not adequate.

The declaration of Jane Reimus, Assistant Director, EOUSA Personnel Staff, also does not describe an adequate search because it does not explain the file systems of the Personnel Staff office, nor does it clarify the "rationale for searching certain locations and not others."  *See Defenders II*, 623 F. Supp. 2d at 92.

Ms. Reimus describes searches she conducted in the "systems of record utilized or maintained by Personnel Staff that would contain any information related to any corrective actions or policies" responsive to plaintiff's request:  hard-copy files in the Personnel Staff office, and the National Finance Center database, an "automated payroll/personnel system

---

4    Plaintiff also argues that the Thomas Declaration does not specify which GCO records were destroyed by the Washington National Records Center.  Pl.'s Sur-Reply at 9.  But it is clear from the affidavit that the Washington National Records Center destroyed all records discussed in the affidavit and provided one unresponsive record to GCO.  *See* Thomas Decl. ¶ 8; *see also Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[M]ere reference to other files does not establish the existence of documents that are relevant.").

utilized by the Personnel Staff." Reimus Decl. ¶¶ 5–6, 8. But Ms. Reimus does not explain why those two systems were the only ones likely to contain responsive records, nor does she describe the Personnel Staff filing system in general. *See Defenders II*, 623 F. Supp. 2d at 92; *see also Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 16–17 (D.D.C. 2011) (finding that "cursory description" of agency's search that identified the reasonably likely location of responsive records without additional detail "provide[d] no basis from which the [c]ourt [could] determine whether the search was adequate under the circumstances"). Therefore, the Reimus Declaration does not describe an adequate search, and the Court will remand the case to defendant on that basis.[5]

### E. The EDAR search was not adequate.

The declaration submitted by Jennifer E. Niemeyer, Legal Assistant to an AUSA for the Eastern District of Arkansas ("EDAR"), also does not describe a search that was reasonably calculated to uncover responsive documents. Ms. Niemeyer does not explain what records are kept at EDAR or how they are organized, nor does she describe performing any searches whatsoever. Rather, she discusses at some length a series of emails exchanged among herself, Mr. Boseker, and others, Niemeyer Decl. ¶¶ 3–9, and then concludes that "EDAR does not have the capability to search back to 2001, for any records or emails," and that "EDAR does not have any records regarding Ms. Jackson." *Id.* ¶ 10. Given the lack of detail in this declaration, the

---

5 Plaintiff contends that the Personnel Staff search was inadequate for the additional reason that Ms. Reimus did not search for Office of Attorney Recruitment and Management ("OARM") records. Pl.'s Sur-Reply at 9–11. But Ms. Reimus explains in her affidavit that OARM does not report to or fall under the EOUSA, and that she therefore was not able to search for responsive records that would be held by OARM, such as records related to the DOJ attorney bar certification process. Reimus Decl. ¶¶ 4(a)–(f). Although the Court has held that this affidavit was insufficient for other reasons, the Court sees no reason to discredit Ms. Reimus's assertion that she was unable to search the records of the OARM.

Court finds that defendant has not met its burden of showing that the search at EDAR was adequate, and will remand the case to defendant on this basis, as well.

## II. Defendant properly withheld most of the contested records.

Defendant withheld the six records unearthed in the GCO search, citing FOIA Exemptions 5 and 6, as well as the Privacy Act. *See* Def.'s Resp. at 5–10; 3d Boseker Decl. ¶¶ 6–7(D); *see also* 5 U.S.C. §§ 522(b)(5)–(6), 552a. Specifically, defendant withheld four records related to the INV-01-06071, LER-99-02724, LER-01-02812, and LER-01-05809 matters, a fifth record also relating to LER-01-05809, and a sixth record that consists of "[t]hree one-page screenshots which contain dated notes prepared and maintained by the then-Legal Counsel's Office." 3d Boseker Decl. ¶¶ 6–7, 7(D); *see also* Def.'s Notice of Compliance with Ct. Order at 1 (clarifying that the document described in paragraph 7(D) of the Third Boseker Declaration constitutes a sixth record). The Court reviewed all of these documents *in camera* in order to make a responsible *de novo* determination. *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Based on this review, the Court finds that FOIA Exemptions 5 and 6 justify the withholding of most, but not all, of the records. The Court also finds that the Privacy Act does not provide an independent basis for any of the withholdings.

### A. The Privacy Act

As an initial matter, defendant asserts that the Privacy Act justifies the withholding of some of the contested records in this case. Def.'s Resp. at 5–6; 3d Boseker Decl. ¶¶ 6–7(D). But an agency cannot withhold records under the Privacy Act that must be disclosed under FOIA. 5 U.S.C. § 552a(t)(2) ("No agency shall rely on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of [FOIA]."); *see also Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir.

1982) (holding that the Privacy Act should "not be used as a barrier to FOIA access"); *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 31 (D.D.C. 2013) ("[A]n agency cannot withhold records under the Privacy Act that must be disclosed under the FOIA."). Therefore, the Court will only address defendant's FOIA-based justifications for withholding the contested records.

### B. FOIA Exemption 5: Legal Standard

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a [g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege. *Taxation with Representation Fund v. I.R.S.*, 646 F.2d 666, 676 (D.C. Cir. 1981). The agency seeking to withhold a document bears the burden of showing that an exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

#### 1. Deliberative Process Privilege

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment." *Klamath*, 532 U.S. at 8–9 (citations

omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

### 2. Attorney Work Product Privilege

The attorney work product privilege protects materials that reflect the "'mental processes of the attorney,'" *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were "'prepared in anticipation of litigation or for trial.'" *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3). An agency can satisfy the "anticipation of litigation" standard by "demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

### 3. Attorney-Client Privilege

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. The privilege also protects communications from attorneys to their clients that "'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also*

14

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

### C. FOIA Exemption 6: Legal Standard

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). To determine whether Exemption 6 applies, a court or agency must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

### D. Most of the contested documents are subject to withholding under FOIA Exemptions 5 and 6.

After reviewing the contested records *in camera*, the Court finds that some, but not all, of defendant's withholdings under FOIA Exemptions 5 and 6 are justified.

1. <u>The records described in paragraphs 6 and 7(D) of the Third Boseker Declaration are exempt under FOIA Exemptions 5 and 6.</u>

The documents described in paragraph six of the Third Declaration of John F. Boseker are "summaries of GCO attorney notes" relating to the four matters labeled INV-01-06071, LER-99-02724, LER-01-02812, and LER-01-05809. 3d Boseker Decl. ¶ 6. Three of these four summaries are identical to the "LCO Screen Shots" described in paragraph 7(D) of the Third Boseker Declaration, and so the Court will consider all of these documents together. *See id.*

¶ 7(D) (describing "[t]hree one-page screenshots which contain dated notes prepared and maintained by the then-Legal Counsel's Office"). Defendant claims that all of these documents are exempt under Exemptions 5 and 6. *Id.* ¶¶ 6, 7(D); *see also* Def.'s Clarification [Dkt. # 53] at 1 (clarifying that defendant invokes Exemption 6 for all documents described in paragraphs 6 and 7(D) of the Third Boseker Declaration). The Court finds that all of these records are protected from disclosure under either Exemption 5 or Exemption 6.

The documents related to the LER-01-05809 and LER-01-02812 matters fall under Exemption 5 because their contents are protected by the attorney-client privilege. Both files reflect confidential communications between defendant and its counsel with respect to former AUSA Jackson's unauthorized practice of law. *See Coastal States*, 617 F.2d at 862. In addition, the file related to LER-01-05809 falls under the deliberative process privilege because "'it reflects the give-and-take of the consultative process'" with respect to the AUSA Jackson situation. *See Judicial Watch*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 866. Therefore, defendant properly withheld these records.

The documents related to the INV-01-06071 and LER-99-02724 matters are exempt from disclosure under FOIA Exemption 6. This exemption protects information related to a person's employment status and employment history, which is the type of information reflected in these records. *See Horner*, 879 F.2d at 875; *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183, 191 (D.D.C. 2011). But whether or not Exemption 6 applies depends on the balance between the privacy interest at issue and the public interest in disclosure. *Horner*, 879 F.2d at 874. In the case of these records, the Court finds that the balance favors privacy.

The Court has already held that there is a valid public interest in knowing how DOJ handles the investigation of unlicensed attorneys. *See* 1st Mem. Op. at 15; 2d Mem. Op. at 9. These particular records, however, contain personal and potentially embarrassing details specific to former AUSA Jackson's employment that shed little light on DOJ's investigation. *See Wash. Post Co.*, 456 U.S. at 599. Therefore, the Court finds that the disclosure of these files would constitute "a clearly unwarranted invasion" of former AUSA Jackson's "personal privacy," and that defendant properly withheld these records, as well. *See* 5 U.S.C. § 552(b)(6).

> 2. <u>The records described in paragraph 7(A) of the Third Boseker Declaration are largely non-exempt and should be redacted and released to plaintiff.</u>

Paragraph 7(A) of the Third Boseker Declaration describes three "Legal Counsel Control Sheets," which are "one-page documents spanning 8/21/2001 to 12/1/01, the contents of which reflect the then-Legal Counsel's Office intra-agency communications" with respect to former AUSA Jackson's unauthorized practice of law. 3d Boseker Decl. ¶ 7(A). Defendant contends that these documents are exempt from disclosure under FOIA Exemptions 5 and 6. The Court finds that FOIA Exemption 6 does not apply to these documents, and that Exemption 5 shields only portions of the documents.

First, Exemption 6 does not apply to these documents because they are not "personnel," "medical," or "similar" files. *See* 5 U.S.C. 552(b)(6). Rather, by defendant's own description, they are Legal Counsel Office communication devices. *See* 3d Boseker Decl. ¶ 7(A). The Court finds that their disclosure would not "constitute a clearly unwarranted invasion of personal privacy" and that Exemption 6 does not apply. *See* 5 U.S.C. § 552(b)(6).

Second, the Court finds that some of the information contained in the Legal Counsel Control Sheets pertaining to the LER-01-05809 matter is protected by Exemption 5 because it

reflects privileged attorney-client communication as well as defendant's deliberative process. But even if a record contains information that is exempt from disclosure, any "reasonably segregable" information in the record must still be released, 5 U.S.C. § 552(b), unless the non-exempt portions are "'inextricably intertwined with exempt portions.'" *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent*, 566 F.2d at 260. Here, the exempt portions of the files are reasonably segregable from the non-exempt portions. Therefore, defendant is directed to release the Legal Counsel Control Sheets pertaining to the LER-01-05809 matter with the following redactions in place:

(1) All text to the right of the word "DESCRIPTION" should be redacted from both documents; and

(2) The final sentence to the right of the word "STATUS," which is on the line that starts with "8/23" and begins after the words "addl. info.," should be redacted from both documents.

The Court further finds that the Legal Counsel Control Sheet pertaining to the INV-01-06071 matter does not contain any privileged information and should be released in full.

### 3. The record described in paragraph 7(B) of the Third Boseker Declaration is exempt under FOIA Exemption 6.

The record described in paragraph 7(B) of the Third Boseker Declaration is a two-page letter with a six-page attachment from the EOUSA Senior Counsel to the Director to former AUSA Jackson that "detail[s] a proposed adverse employment action to be taken" against Ms. Jackson. 3d Boseker Decl. ¶ 7(B). The Court finds that this record is protected from disclosure in its entirety by FOIA Exemption 6. Although there is a valid public interest in knowing how defendant handled its investigation of former AUSA Jackson's unlicensed practice of law, the privacy interest at stake with this particular record outweighs that public interest because this record details a specific proposed adverse employment action against Ms. Jackson that sheds

little light on defendant's handling of the investigation in this case. Revealing the details of this record would constitute "a clearly unwarranted invasion" of former AUSA Jackson's "personal privacy," *see* 5 U.S.C. § 552(b)(6), and would do little to advance the public interest. Therefore, the record was properly withheld under Exemption 6.

    4. <u>The record described in paragraph 7(C) of the Third Boseker Declaration is exempt under FOIA Exemptions 5 and 6.</u>

The record described in paragraph 7(C) of the Third Boseker Declaration is an LCO "Employee Relations" form that consists of a "[o]ne-page, intra-agency document prepared and maintained by the then-Legal Counsel's Office summarizing evidence and factual aspects of the investigation . . . , [and] analysis and thoughts respecting actions contemplated to be taken regarding AUSA Jackson's 'unauthorized practice of law.'" 3d Boseker Decl. ¶ 7(C). The Court finds that this record is exempt from disclosure under FOIA Exemptions 5 and 6. First, the document reflects privileged attorney-client communications and "'the give-and-take of the consultative process.'" *See Judicial Watch*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 866. And, second, the document contains personal details specific to former AUSA Jackson that would do little to advance the understanding of how defendant investigates unlicensed attorneys, either in this case or in general. Therefore, the document was properly withheld.

## CONCLUSION

For the reasons stated above, the Court will once again remand this matter to DOJ for further action consistent with this opinion. Defendant is again directed to conduct an adequate search and to produce all segregable non-exempt information to plaintiff that is responsive to categories two and three of plaintiff's FOIA request, or to submit a supplemental declaration demonstrating that it has complied with its duties under FOIA. Defendant is also directed to release the documents described in paragraph 7(A) of the Third Boseker Declaration, subject to the redactions described in this opinion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 23, 2014