UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LONNIE J. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-2068 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| Executive Office for U.S. Attorneys, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Lonnie J. Parker brought this Freedom of Information Act ("FOIA") lawsuit against defendant the U.S. Department of Justice Executive Office for U.S. Attorneys on December 3, 2010, seeking documents related to former Assistant U.S. Attorney ("AUSA") Lesa Gail Bridges Jackson and her unauthorized practice of law. Compl. [Dkt. # 1] ¶ 1. After multiple rounds of briefing and three previous memorandum opinions, the parties have winnowed their dispute to a single remaining issue: whether defendant properly withheld a one-page record, "Document 2." For the reasons that follow, the Court finds that Document 2 is responsive to plaintiff's FOIA request, but that it is almost entirely exempt from release. Therefore, the Court will order defendant to release the record to plaintiff with appropriate redactions, and will enter an order of final judgment in this case.

## BACKGROUND

On April 26, 2010, plaintiff submitted a FOIA request to defendant seeking records related to Lesa Gail Bridges Jackson and her unauthorized practice of law while working as an Assistant U.S. Attorney. *See* Ex. A to Decl. of John F. Boseker [Dkt. # 7]. Plaintiff sought six

types of documents, which the Court later grouped into three broad categories:

<u>Category one: personnel matters and law license records</u>

(1) All agency records that document, discuss, or otherwise describe whether Lesa Gail Bridges Jackson was authorized to practice law, and/or a member of good standing of the Bar of the State of Arkansas, or any other state bar, at the time she was hired to work as a U.S. Attorney in 1989;

(2) All agency records that document, discuss, or otherwise describe any annual or periodic certifications made by AUSA Jackson . . . asserting that she was an attorney in good standing and/or authorized to practice law;

(3) All agency records of any written communication between AUSA Jackson and the U.S. Attorney's Office that discuss whether she was a member of good standing of the Bar of the State of Arkansas, or authorized to practice law;

<u>Category two: disciplinary matters</u>

(4) All agency records of any investigations or agency review into allegations that AUSA Jackson was not authorized to practice law at the time she worked as a U.S. Attorney with the U.S. Attorney's Office, and/or had submitted false or misleading records pertaining to her bar status or authorization to practice law;

(5) All agency records that document, discuss, or otherwise describe any disciplinary action taken against AUSA Jackson . . . on the basis that she was not authorized to practice law, or had otherwise provided false information . . . [regarding her attorney status], or which otherwise discuss . . . the reasons that [she] is no longer an employee of the U.S. Attorney's Office at this time;

<u>Category three: remedial measures</u>

(6) All agency records that document, discuss or otherwise describe any remedial measures or additional policies implemented by the U.S. Attorney's office to prevent future circumstances wherein a U.S. Attorney could be hired or remain employed as a U.S. Attorney, notwithstanding the fact that they were suspended from the practice of law, or not authorized to practice law.

*Id.*; *see also* 1st Mem. Op. [Dkt. # 18] at 6, 9, 16 (describing the three categories).

Defendant did not produce any documents in response to plaintiff's requests, Compl. ¶ 15, and the parties embarked upon what would become more than four years of litigation. *See* 3d Mem. Op. [Dkt. # 55] at 2–4 (setting forth the procedural history of this case). On January 7,

2015, the parties notified the Court that "[t]he sole remaining issue in this action" was a dispute over whether the government had properly withheld Document 2, a one-page record. Joint Status Report [Dkt. # 60] ¶ 3, Jan. 7, 2015. The parties further stated that, "upon the Court's resolution of this issue, it is appropriate for the Court to issue a Final Order and Judgment in this action." *Id.* ¶ 6.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B) (2012); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided

nine exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

The only remaining issue in this case is whether defendant has properly withheld Document 2. Joint Status Report ¶ 3, Jan. 7, 2015. Defendant describes Document 2 as "a type written memorandum with a hand written date of 4/11/01" that was located "in the records of former U.S. Attorney Paula Casey[], in a file folder with the name of Lesa Jackson on the folder." 5th Decl. of John F. Boseker [Dkt. # 60-1] ("5th Boseker Decl.") ¶¶ 2–3. Defendant explains that "[t]he typewritten portion of the memo indicates that it is a memorandum between United States Attorneys discussing what documents and which other attorneys should be involved in discussing discipline and when they would be available." *Id.* ¶ 2. In addition, defendant describes a handwritten comment below the typed portion of the record that "discuss the attorney availability for discussions, timing of responses and what discipline is available." *Id.*

Defendant contends that this record is not responsive to plaintiff's request because it does

4

not contain the name of AUSA Jackson or refer to any unauthorized practice of law. *Id.* ¶¶ 2, 4. But if the Court determines that the record is responsive to plaintiff's request, defendant contends that it should be withheld under FOIA Exemptions 5 and 6. *Id.* ¶ 3.

After reviewing the contested record *in camera*, the Court finds that it is responsive to plaintiff's request, but that its contents are largely subject to withholding under FOIA Exemption 5. Therefore, the Court will order defendant to release Document 2 to plaintiff with redactions. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

As defendant admits, this document was located in the files of a former U.S. Attorney in a folder labeled with Lesa Jackson's name, and it discusses matters related to potential disciplinary action to be taken against a female AUSA. *See* 5th Boseker Decl. ¶¶ 2–3. Moreover, defendant does not deny that the unnamed female AUSA discussed in the record was Lesa Jackson. Thus, it is fair to conclude that this record concerns former AUSA Jackson and that it is therefore responsive to category two of plaintiff's FOIA request, which sought records related to disciplinary matters. *See* 1st Mem. Op. at 9–10 (describing category two of the request).

But although this record is responsive to plaintiff's FOIA request, it also contains privileged material that is subject to withholding under FOIA Exemption 5. Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a

[g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). It "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including (1) the attorney-client privilege, (2) the executive "deliberative process" privilege, and (3) the attorney work-product privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). The agency seeking to withhold a document bears the burden of showing that an exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

First, "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Second, the attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. The privilege also protects communications from attorneys to their clients that

"'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).  In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

Finally, the attorney work product privilege protects materials that reflect the "'mental processes of the attorney,'" *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were "'prepared in anticipation of litigation or for trial.'" *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3).  An agency can satisfy the "in anticipation of litigation" standard by "demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

Document 2 falls within the ambit of all three of these civil evidentiary privileges:  its contents are "both predecisional and deliberative," *Judicial Watch*, 449 F.3d at 151; it reflects a confidential attorney-client communication, *see In re Lindsey*, 148 F.3d at 1105; and it appears to have been "prepared in the course of an investigation that was undertaken with litigation in mind."  *SafeCard Servs.*, 926 F.2d at 1202.  There are small and segregable portions of the record, however, that are not privileged, and so defendant will be ordered to release it with the following redactions:  the two handwritten dates, the first sentence of the typewritten portion of the memo, and the first five words of the handwritten note should be released; everything else in the record may be redacted.  *See* 5 U.S.C. § 552(b).

## CONCLUSION

Defendant is directed to release Document 2 with the redactions described above. The final issue in this case has now been resolved, and so the Court will enter an order dismissing this matter. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: January 21, 2015